**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

|  |  |
|---|---|
| **ACADIA INSURANCE COMPANY,** | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| v. | ) |
|  | ) |
| **ARCHITECTUAL GRAPHICS, INC.,** | ) Civil Action No.: 2:19-cv-121 |
|  | ) |
| Serve: Registered Agent | ) |
| Samuel J. Webster | ) |
| Willcox & Savage PC | ) |
| 440 Monticello Ave., Ste. 2200 | ) |
| Norfolk, Virginia 23510 | ) |
|  | ) |
| **Defendant.** | ) |
|  | ) |

**COMPLAINT**

Plaintiff Acadia Insurance Company ("Acadia"), by counsel, states as follows as its Complaint against Defendant Architectural Graphics, Inc. ("AGI").

**I.    Parties**

1.     Plaintiff Acadia is a corporation duly organized and existing under the laws of the State of Iowa, with its principal place of business in the State of Maine. At all relevant times hereto, Acadia was duly authorized to conduct the business of insurance in the Commonwealth of Virginia.

2.     AGI is a corporation duly organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in the Commonwealth of Virginia.

**Jurisdiction and Venue**

3.     This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00).

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## II.   Facts

### A. The Underlying Claims

6. On or about March 9, 2017, Michael Emo and Helen Emo, as next of kin to David Emo (the "Emos"), filed a lawsuit against Ford Motor Company ("Ford") and Reynolds Ford of Edmond, LLC ("Reynolds"), in the District Court of Oklahoma County, Oklahoma (Case No. CJ-2017-1417) (the "Emo Suit").

7. On or about August 24, 2018, the Emos filed their First Amended Petition (the "First Amended Petition") in the Emo Suit.

8. The First Amended Petition alleges that on November 21, 2013, David Emo was working to repair and maintain a large marquis sign (the "Sign") at the Reynolds auto dealership. (First Amended Petition, p. 4, ¶ 18.)  David Emo was changing lightbulbs inside the Sign, when electricity was restored to the Sign and David Emo was fatally electrocuted. (First Amended Petition, p. 2, ¶ 9.)

9. The First Amended Petition alleges individual acts of negligence against Ford and Reynolds.

10. The First Amended Petition contains the following Causes of Action: (1) Wrongful Death and Survival Petition for Negligence, against Ford and Reynolds; (2) Gross Negligence, against Ford and Reynolds; (3) Premises Liability, against Ford and Reynolds; (4) Liability of Defendant, Ford Motor Company, against Ford; (5) Defendant Ford Motor Company Breach of

Implied Warranty of Merchantability and Fitness for a Particular Purpose, against Ford; (6) The Discovery Rule, against Ford and Reynolds; and (8) Extra Hazard Condition, against Ford and Reynolds.

### B. The Service Agreement/Tender/Response

11. AGI entered into an agreement to provide services for Ford, titled Global Term and Conditions for Non-Production Goods and Services, effective December 1, 2007 (the "Service Agreement").

12. The Service Agreement provides, in pertinent part, the following defense and indemnity provision:

> 12. Defense and Indemnity
>
> (a) To the full extent permitted by applicable law, Seller will indemnify Buyer, its directors, officers and employees and authorized dealers for all expenses (including attorney fees, settlements, and judgments) incurred by Buyer in connection with all claims (including lawsuits, administrative claims, regulatory actions, and other proceedings to recover for personal injury or death, property damage, or economic losses) that are related in any way to Seller's representations, performance or obligations under a Purchase Order, including claims based on Seller's breach of warranty and claims for any related violations of any applicable law, ordinance or regulation or government authorization or order. Seller's obligation to indemnify under this Section will apply regardless of whether the claim arises in tort, negligence, contract, warranty, strict liability or otherwise **except to the extent of the negligence of Buyer**.
>
> (b) If Seller provides services to Buyer on Buyer's premises, Seller will examine the premises to determine whether they are safe for such services and will advise Buyer promptly of any situation it deems to be unsafe. Seller's employees, contractors and agents will not possess, use, sell or transfer illegal drugs, medically unauthorized drugs or controlled substances, or unauthorized alcohol, and will not be under the influence of alcohol or drugs on Buyer's premises. Seller shall be exclusively responsible for, shall bear, and shall relieve Buyer from liability for all loss, expense, damage or claims resulting from bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any

3

person or persons, or on account of damage to or destruction of property, including that of Buyer, arising out of, or in connection with the performance of work on Buyer's premises except that Seller shall not be responsible for or relieve Buyer from liability for claims arising from the willful misconduct or the sole negligence of Buyer.

(Serv. Agrmt., p. 7, ¶ 12., emphasis added.)

13. Ford and Reynolds have tendered the Emo Suit to AGI and have requested a defense and indemnification against the Emo Suit, pursuant to the Service Agreement.

14. Upon information and belief, subsequent to death of David Emo, and without the consent of Acadia, AGI entered into an agreement with Ford for AGI to indemnify Ford (and potentially Reynolds) with regard to the Emo Suit (the "Post Loss Indemnification Agreement").

15. AGI has requested that Acadia cover or reimburse AGI for the amounts AGI incurs to defend and indemnify Ford and potentially Reynolds with respect to the Emo Suit.

### C. The Policy

16. Acadia issued Commercial Lines Policy number CPA 0124763-45 to AGI (as the Named Insured), with a policy period from May 1, 2013 to May 1, 2014 (the "Policy").

17. Relevant to the First Amended Petition, the Policy contains the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABLITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

\* \* \*

2. **Exclusions**

   This insurance does not apply to:

\* \* \*

4

  **b. Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

    \* \* \*

   **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" . . . occurs subsequent to the execution of the contract or agreement.

    \* \* \*

 **SECTION II – WHO IS AN INSURED**

 **1.** If you are designated in the Declarations as:

    \* \* \*

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    \* \* \*

 **SECTION V – DEFINITIONS**

    \* \* \*

 **9.** "Insured contract" means:

    \* \* \*

  **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

    \* \* \* \*

### III. Count I – Declaratory Judgment

18. Acadia realleges and reincorporates herein by reference the allegations set forth in the foregoing paragraphs.

19. An actual controversy exists between Acadia and AGI concerning whether Acadia has a duty under the Policy to provide coverage for or reimburse AGI for amounts AGI incurs for

defending or indemnifying Ford and/or Reynolds against the Emo Suit (pursuant to the Service Agreement, the Post Loss Indemnity Agreement, or otherwise). There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

20. Acadia seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2002 that Acadia has no obligation to provide coverage to or reimburse AGI for amounts AGI incurs for defending or indemnifying Ford and/or Reynolds against the Emo Suit.

21. Acadia is entitled to a declaration to that effect for each and all of the following reasons:

(a) No provision of the Policy, including the Supplemental Payments provision, requires Acadia to pay for the defense of Ford and/or Reynolds against the Emo Suit.

(b) In the context of the Emo Suit, the Service Contract does not constitute an "insured contract" under the Policy, because the Emo Suit seeks to impose liability on Ford and Reynolds for their alleged individual acts of negligence, for which the Service Agreement's Defense and Indemnity provision provides that Ford retains its own liability. Moreover, even if the Defense and Indemnity provision of the Service Agreement were implicated by the Emo Suit, the Defense and Indemnity provision only extends indemnification for amounts incurred by Ford (not Reynolds). Further, the Defense and Indemnity provision of the Service Agreement is not invoked with respect to the claims pending in the Emo Suit against Ford and/or Reynolds because the claims are not related to AGI's "representations, performance or obligations under a Purchase Order."

(c) The Post Loss Indemnity Agreement falls within and invokes Exclusion 2.b. (Contractual Liability) because the Post Loss Indemnity Agreement was entered into subsequent to the "bodily injury" complained of in the Emo Suit.

6

(d) The amounts that AGI incurs or pays under the Post Loss Indemnity Agreement are not amounts that AGI became "legally obligated to pay as damages because of 'bodily injury'" so as to invoke the Coverage A Insuring Agreement of the Policy. Further, where Acadia has indicated that it would defend under the Policy any claims by Ford or Reynolds against AGI under the Defense and Indemnity Provision of the Service Agreement, amounts that AGI incurs or agrees to pay under the Service Agreement to Ford and/or Reynolds also do not qualify as amounts that AGI became "legally obligated to pay as damages because of 'bodily injury'" so as to invoke the Coverage A Insuring Agreement of the Policy, and also constitute violation of the Policy's voluntary payments provision.

WHEREFORE, Acadia respectfully requests that this Court:

1. Declare that Acadia has no duty to provide coverage to or reimburse AGI for amounts AGI pays or incurs in defending or indemnifying Ford and/or Reynolds against the Emo Suit; and/or

2. Award such other and further relief as this Court deems just and proper.

**ACADIA INSURANCE COMPANY**

By:   /s/ John B. Mumford, Jr.
         **Counsel**

John B. Mumford, Jr. (VSB No.: 38764)
David P. Abel (VSB No.: 85538)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Road, Suite 400
Glen Allen, VA 23060
jmumford@hancockdaniel.com
dabel@hancockdaniel.com
Phone: (804) 967-9604
Fax: (804) 967-9888
*Counsel for Acadia Insurance Company*